[Cite as *Hartline v. Atkinson*, 2020-Ohio-5606.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

KERRY R. HARTLINE ET AL.,

Plaintiffs-Appellants,

v.

ELLA J. ATKINSON ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 MO 0006

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2017-101

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Kristopher Justice* and *Atty. Daniel Corcoran,* Theisen Brock, 424 Second Street, Marietta, Ohio 45750, for Plaintiffs-Appellants,  and

*Atty. Kyle Bickford* and *Atty. Erik Schramm, Jr.*, Hanlon, Estadt, McCormick & Schramm Co., 46457 National Road West, St. Clairsville, Ohio 43950, for Defendants-Appellees.

Dated:
December 8, 2020

**Donofrio, J.**

{¶1}     Plaintiffs-appellants, Kerry and Mary Hartline (the Hartlines), appeal from a Monroe County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees, Vivian Dillon, Pamela Ensinger, Patricia Rude, Paul Bierie, and Patricia Bierie (the Webbs), on the Hartlines' claims that the Webbs' mineral interests were abandoned or expired and to quiet title to those mineral interests.

{¶2}     In 1914, Ella Atkinson conveyed 65.275 acres of property in Monroe County (the Property) to Charles C. Webb by way of the "Atkinson Deed."  The Atkinson Deed stated that the Property was free and clear from all encumbrances "except the vein of coal known as #8 or Pittsburgh Vein; and half the royalty of oil and gas, and the privilege for mining and drilling on said farm" (Atkinson Interest).  The Atkinsons are the heirs of Ella Atkinson.

{¶3}     In 1918, Charles C. Webb and his wife Belle conveyed their interest to Isaac Ady by way of the "Webb Deed."  The Webb Deed accepted and reserved "the full three fourths (3/4) of all the oil and gas lying into and under the above described tracts of land" (Webb Interest).

{¶4}     Charles and Ella Webb had two children and four grandchildren.  The Webbs are Charles' and Elle's grandchildren.

{¶5}     In December 2004, the Hartlines acquired title to the surface of approximately 85 acres of land, including the Property which encompasses both the Atkinson Interest and the Webb Interest.

{¶6}     On March 6, 2017, the Hartlines filed a complaint asserting ten claims regarding the Webb Interest and the Atkinson Interest.  With regard to the Webb Interest, the complaint asserted it had expired because it lacked words of inheritance (second claim), it had been extinguished by operation of the Marketable Title Act (MTA) (fifth claim), it had been abandoned under the Dormant Mineral Act (DMA) (seventh claim), and that title to the Webb Interest should be quieted in favor of the Hartlines (tenth claim).  With regard to the Atkinson Interest, the complaint asserted the interest had expired because it lacked any words of inheritance (first claim), it was a limitation on the grantor's

warranty (third claim), it had been extinguished by operation of the MTA (fourth claim), it had been abandoned under the DMA (sixth claim), it had been abandoned under common law (eighth claim), and title to the Atkinson Interest should be quieted in favor of the Hartlines (ninth claim). [1]

**{¶7}** The complaint and Notice of Abandonment was served on appellee Vivian Dillon on March 7, 2017 and on appellee Pamela Ensinger on March 9, 2017. The Hartlines also published a Notice of Abandonment in the *Monroe County Beacon* on March 30, 2017.

**{¶8}** Vivian Dillon executed and recorded an Affidavit of Claim to Preserve a Mineral Interest on April 25, 2017.

**{¶9}** All parties filed motions for summary judgment. The trial court granted the Webbs' motion for summary judgment with respect to the Webb Interest. The court found that the MTA did not act to extinguish the Webb Interest due to two title transactions, which saved the Webb Interest. It also granted the Hartlines' motion with respect to their sixth claim regarding the Atkinson Interest and found their other claims regarding the Atkinson Interest to be moot.

**{¶10}** The Hartlines filed a timely notice of appeal on March 18, 2020. They now raise a single assignment of error.

**{¶11}** The Hartlines' assignment of error states:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES, VIVIAN DILLON, PAMELA ENSINGER, PATRICIA A. RUDE, PAUL BIERIE, AND PATRICIA S. BIERIE, AND DENYING SUMMARY JUDGMENT IN FAVOR OF APPELLANTS, KERRY R. HARTLINE AND MARY E. HARTLINE.

**{¶12}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

---

1 As this appeal deals only with the Webb Interest, facts and issues relating solely to the Atkinson Interest will not be addressed.

**{¶13}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶14}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶15}** The Hartlines raise three main arguments. We will address each in turn.

**{¶16}** First, the Hartlines argue the Webb Interest has been extinguished by the MTA.

**{¶17}** Pursuant to the MTA, a person who has an unbroken chain of title of record to any interest in land for 40 years or more has a marketable record title to such interest. R.C. 5301.48. A "marketable record title" is defined as "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 530.1.50 of the Revised Code." R.C. 5301.47(A).

**{¶18}** The Hartlines claim they have an unbroken chain of record title for more than 40 years. They cite to the following: (1) Ella Atkinson conveyed the Property to Charles C. Webb in 1914 by way of the Atkinson Deed; (2) Charles C. Webb conveyed the Property to Isaac Ady by way of the Webb Deed in 1918; (3) Isaac Ady conveyed the Property to Walter E. Ady, Matthew H. Ady, Everett I. Ady, Vernon Ady, and Allen Ady in 1922; (4) Walter, Matthew, Everett, Vernon, and Allen conveyed the Property to Glenna

A. Ward in 1930; (5) Glenna conveyed the Property to Joseph W. Hartline in 1962; (6) Joseph conveyed the Property to Joseph W. Hartline and Carolyn B. Hartline in 1992; and (7) Joseph and Carolyn conveyed the Property to the Hartlines (appellants in this case) in 2004. The Hartlines filed certified copies of the Monroe County Recorder's Office evidencing each of the deeds in question.

{¶19} The MTA defines "root of title" as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date of forty years prior to the time when marketability is being determined." R.C. 5301.47(E). The effective date of the root of title is the date it was recorded. R.C. 5301.47(E).

{¶20} Determining marketability as of March 6, 2017 (the date this action was filed), the Hartlines' root of title is the 1962 deed from Glenna Ward to Joseph W. Hartline dated April 24, 1962 and recorded May 1, 1962 (1962 Deed). The Webb Interest was created prior to the 1962 Deed. Thus, in order to prevent the Webb Interest from being extinguished under the MTA, an exception to the Hartlines' record marketable title would have to apply.

{¶21} The trial court found that the exception listed in R.C. 5301.49(D) applied. It provides that record marketable title is subject to: "[a]ny interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started[.]" R.C. 5301.49(D). A "title transaction" is "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F).

{¶22} The trial court pointed out that estates were filed in the Monroe Probate Court for Charles C. Webb, his son William C. Webb, and his granddaughter Billie Jean Ady. The court stated that under the MTA, a filing in probate court constitutes a "recording" when dealing with a title transaction. The court went on to find that the Webb Interest was subject to two title transactions subsequent to the Hartlines' root of title in 1962, those being William C. Webb's Last Will and Testament filed on February 4, 1992

Case No. 20 MO 0006

and Billie Jean Ady's Last Will and Testament filed on November 2, 1995. Thus, the trial court concluded that the Webb and Ady Estates were filed within the applicable marketable title period and they constituted title transactions. Therefore, the court found that the Webb Interest was saved by, not extinguished by, the MTA.

**{¶23}** The Hartlines, however, emphasize that the R.C. 5301.49(D) exception expressly states that the title transaction must be filed within an "unbroken" chain of title. They claim that the chain of title in this case was broken. First, they point out that Charles C. Webb's 1931 Last Will and Testament did not identify the Webb Interest. Instead, it devised all of Charles' property to his wife Belle C. Webb and then, after her death, whatever was left was to be divided between their children William and Marjorie. They note that Charles' will specified that nothing was to conflict with Belle selling any property and that any real estate she wished to sell was to be in fee simple. The Hartlines argue that if Belle sold the Property during her lifetime it would never pass to William and Marjorie. The Hartlines go on to point out that neither William C. Webb's will nor Billie Jean Ady's will identify the Property or the Webb Interest.

**{¶24}** The Hartlines argue there was a break in title because there is no specific title transaction transferring the Webb Interest from Belle to William. Instead, Charles' will left all of his property to Belle and gave her the right to sell any of the property during her lifetime. The Hartlines assert the transfer of the Webb Interest, if it occurred at all, from Belle to William is a critical link in the chain of title. They argue William's will cannot affect title to the Webb Interest and the interest cannot arise out of the will unless William actually held record title to the Webb Interest at the time of his death. Because there was nothing recorded from 1962 to 2002 (the 40 years required by the MTA) indicating that Belle died and the Webb Interest transferred to William, the Hartlines assert they held marketable record title to the property as there were no exceptions filed within 40 years of their 1962 root of title. They note that once a 40-year period is found where there is no preserving act, no act occurring after the 40-year period can revive the extinguished interest. Citing *Senterra Ltd. v. Winland*, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387, ¶ 58, modified on reconsideration, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-5458, appeal allowed, 158 Ohio St.3d 1522, 2020-Ohio-3018, 145 N.E.3d 311.

**{¶25}**   Alternatively, the Hartlines argue even if William's and Billie Jean's wills did not have to be filed in an unbroken chain of title in order to preserve the Webb Interest, those wills did not "affect" title to the Webb Interest and the Webb Interest did not "arise" out of the wills because the wills did not identify or describe the Webb Interest or the Property.   They contend that in order for the wills to affect title to the Webb Interest and for the Webb Interest to arise out of the wills, the wills must satisfy the requirements for any transfer of an interest in land.   The requirements for the conveyance of real property include a legal description that can be used to locate the land.   The Hartlines assert that without a description in a title transaction that transaction can never serve as a new root of title.

**{¶26}**   The Marketable Title Act's extinguishment provisions do not require that the title transaction being filed is filed in the recorder's office.   *Warner v. Palmer*, 7th Dist. Belmont No. 14 BE 0038, 2017-Ohio-1080, ¶ 39.   "Recording, in the context of R.C. 5301.49(D), includes filing in the probate court."   *Id*. citing R.C. 5301.47(B), (C).   Thus, the filing of the wills in probate court in this case suffice as "recording" under the MTA.

**{¶27}**   Furthermore, the fact that the Webb Interest was not specifically listed in Charles', William's, or Billie Jean's wills does not mean the interest did not pass from heir to heir.

**{¶28}**   In *Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078, appeal not allowed, 158 Ohio St.3d 1422, 2020-Ohio-647, 140 N.E.3d 740, reconsideration denied, 158 Ohio St.3d 1507, 2020-Ohio-2819, 144 N.E.3d 447, we examined a residuary clause leaving the following interest:   "All the residue of my property of whatsoever kind and wheresoever situated, including all lapsed legacies and devises, I give, devise and bequeath to my Trustees in trust for the uses and purposes hereinafter set forth."   *Id*. at ¶ 23.   Regarding whether the mineral interest at issue passed under the residuary clause, we found:

> The mineral interests were passed by will to the heirs of John W. Kirk, as the above clause constitutes a title transaction as defined by R.C. 5301.47 and *Warner I*. Appellees are holders to the mineral interests by succession. Even though the mineral interest was not specifically listed in the estate administration of John W. or Helen S. Kirk, that does not mean that the heirs

Case No. 20 MO 0006

at law are not holders or would not be given holder status. As stated in *Warner I*, the failure to list the interest during the estate administration does not mean that Appellees lost their inherited mineral interests.

*Id.* at ¶ 24. We went on to find that because there was a title transaction during the 40 years following the appellants' root of title, the appellees' oil and gas interest was saved by the MTA rather than extinguished under it. *Id.* at ¶ 25.

{¶29} Thus, the fact that the Webb Interest was not specifically listed in any of the wills did not prevent it from transferring title and constituting a title transaction under the MTA.

{¶30} Moreover, while the Hartlines argue that Belle could have sold the Webb Interest during her lifetime, as Charles' will gave her permission to do, there is no evidence whatsoever to suggest that she did. If Belle had made such a sale, presumably the parties would have discovered it in their title searches. We will not speculate as to a sale for which there is no evidence.

{¶31} Finally, Belle died intestate in 1958, before the Hartlines' root of title. Thus, her property including the Webb Interest, passed to William four years prior to the root of title.

{¶32} Accordingly, the trial court properly found that the MTA saved the Webbs' interest rather than extinguishing it.

{¶33} Second and alternatively, the Hartlines argue the Webb Interest was abandoned under the DMA. They assert the claim to preserve was not filed during the 20 years immediately preceding the R.C. 5301.56(E) notice.

{¶34} The trial court found that appellee Vivian Dillon properly and timely executed and filed an Affidavit of Claim to Preserve a Mineral Interest on April 25, 2017. The court found that this affidavit prevented the abandonment of the Webb Interest under the DMA.

{¶35} In this case, the Hartlines served a Notice of Abandonment on Webb appellee Vivian Dillon on March 7, 2017. Pursuant to R.C. 5301.56(H)(1)(a), if a holder or a holder's successors or assignees claim that the mineral interest that is the subject of a R.C. 5301.56(E) notice has not been abandoned, they, not later than 60 days after the

date on which the notice was served or published, shall file in the office of the county recorder of each county where the land that is subject to the mineral interest is located either a claim to preserve the mineral interest or an affidavit identifying a saving event.

**{¶36}** Vivian Dillon filed and recorded her Affidavit of Claim to Preserve a Mineral Interest on April 25, 2017 in the Monroe County Official Records. Thus, she timely filed and recorded her affidavit. Pursuant to R.C. 5301.56(C)(2), Vivian Dillon's affidavit "preserves the rights of all holders of a mineral interest in the same lands." Thus, her affidavit preserved all of the Webbs' rights.

**{¶37}** The Ohio Supreme Court has expressly rejected the Hartlines' argument on this issue that the Webbs had to file the claim to preserve during the 20 years immediately preceding the R.C. 5301.56(E) notice. The Court has determined:

> [T]he plain language of the Dormant Mineral Act permits a mineral-interest holder's claim to preserve to serve two separate but similar functions depending on when it is filed for record: one as a saving event under R.C. 5301.56(B)(3)(e) when filed in the 20 years preceding notice and another to preclude the mineral interest from being deemed abandoned under R.C. 5301.56(H)(1)(a) when filed within 60 days after service of the surface owner's notice. Nothing in the act states that a claim to preserve filed under R.C. 5301.56(H)(1)(a) must refer to a saving event that occurred within the preceding 20 years. Nor do the notice procedures in R.C. 5301.56(H)(1)(a) require that the claim to preserve be itself filed in the 20 years preceding notice by the surface owner. The statute plainly states that such a claim can be filed within 60 days after notice. R.C. 5301.56(H). Thus, to preserve the mineral holder's interests, the plain language of R.C. 5301.56(H) permits either a claim to preserve the mineral interest or an affidavit that identifies a saving event that occurred within the 20 years preceding notice.

*Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 30. Accordingly, the Hartlines' DMA argument must fail.

**{¶38}** Finally, the Hartlines argue that the Webbs do not have marketable record title to a greater interest in the oil and gas royalty than that which was originally accepted and reserved in the Webb Deed in 1918. They argue that because Ella Atkinson reserved 1/2 of the royalty interest in the Atkinson Deed in 1914, Charles C. Webb could not reserve 3/4 of the royalty interest in the same property in the Webb Deed in 1918. They assert that under the *Duhig* Rule Charles C. Webb reserved just 1/4 of oil and gas royalty in the Webb Deed and the other 1/4 of the royalty was conveyed to Isaac Ady (the Hartlines' predecessor in title). The Hartlines go on to elaborate on their *Duhig* Rule argument. They admit that it was not until their second motion for summary judgment that they asked the trial court to grant declaratory relief in their favor on this issue. And they acknowledge that the trial court did not address this issue. The Hartlines ask this court to find that under the *Duhig* Rule, Charles C. Webb reserved just 1/4 of the oil and gas royalty and the other 1/4 was conveyed to Isaac Ady.

**{¶39}** The *Duhig* Rule is a rule of estoppel under which a grantor and his successors are estopped from claiming title in a reserved fractional mineral interest when doing so would, in effect, breach the grantor's warranty as to the title and interest purportedly conveyed to the grantee. *Talbot v. Ward*, 7th Dist. Monroe No. 15 MO 0001, 2017-Ohio-9213, ¶ 52 citing *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 507–508, 144 S.W.2d 878 (1940).

**{¶40}** As the Webbs point out, the Hartlines' complaint does not ask the court to define the parameters of the Webb Interest. The complaint raised ten grounds for relief. Regarding the Webb Interest, the complaint asserted it had expired because it lacked words of inheritance, it had been extinguished by operation of the MTA, it had been abandoned under the DMA, and title to the Webb Interest should be quieted in favor of the Hartlines. Nowhere in the complaint do the Hartlines request a declaratory judgment that the Webbs do not have marketable record title to a greater interest in the oil and gas royalty than that which was originally accepted and reserved in the Webb Deed in 1918.

**{¶41}** "A new claim cannot be asserted by motion but must be asserted by amended complaint." *Wright v. Sears, Roebuck & Co.*, 10th Dist. Franklin No. 83AP-153, 1983 WL 3640, *2 (Aug. 9, 19983). The Hartlines never filed an amended complaint

seeking a declaratory judgment defining the Webb Interest.  Thus, the trial court correctly did not rule on this claim.

**{¶42}**  Accordingly, we will not address the Hartlines' *Duhig* Rule argument as it was not properly raised in the trial court.

**{¶43}**  In sum, because summary judgment in the Webbs' favor was correct, the Hartlines' sole assignment of error is without merit and is overruled.

**{¶44}**  For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

Robb, J., concurs.

Case No. 20 MO 0006

_____

For the reasons stated in the Opinion rendered herein, the sole assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**