[Cite as *Claugus Family Farm & Forests, L.P. v. Piatt*, 2025-Ohio-291.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

CLAUGUS FAMILY FARM & FORESTS, L.P.,

Plaintiff-Appellant,

v.

M. F. PIATT ET AL.,

Defendants-Appellees.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 24 MO 0015

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2023-082

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed and Vacated in part.

---

*Atty. Andrew P. Lycans*, Critchfield, Critchfield & Johnston, Ltd., for Plaintiff-Appellant
and

*Atty. Daniel P. Corcoran,* Theisen Brock, for Defendants-Appellees*.*

Dated: January 29, 2025

**DICKEY, J.**

{¶1} Plaintiff-Appellant, Claugus Family Farm & Forests, L.P. (surface owner) appeals the judgment entry of the Monroe County Court of Common Pleas sustaining the motion for summary judgment filed on behalf of Defendants-Appellees, John Stephens, Carolyn Stephens, Dean J. Holtsclaw, Mark E. Holtsclaw, James Holtsclaw, Jeff Hamrick, Patricia Jones, Dorothy Hamrick[1], Linda Myers, Connie King, Gail Pangborn, and Tina Koslosky (purported royalty interest owners), in this action to quiet title in two fractional royalty interests. In addition to seeking judgment against the foregoing parties, Appellant sought summary judgment against defaulting defendants, Anna Holtsclaw, Wilbur Graydon Holtsclaw, and Alice Boggs Holtsclaw, as well as their unknown heirs, devisees, executors, administrators, relicts, next of kin and assigns, who also had a purported royalty interest as successors of J.T. Craig (collectively "Craig heirs"). The trial court overruled the cross-motion for summary judgment filed on behalf of Appellant in its entirety.

{¶2} Appellant's complaint sought a declaration that two fractional royalty interests, one conveyed to J.T. Craig ("Craig royalty interest") and the other conveyed to M.F. Piatt ("Piatt royalty interest") in the same sale of royalty, dated May 14, 1900, have been extinguished by operation of the Marketable Title Act, and to quiet title to the respective royalties interests. Appellant further sought a declaration that it was entitled to royalties that Gulfport Energy Corporation ("Gulfport") (oil and gas lessee) is holding in suspense pending the outcome of this action. The trial court found two recorded wills containing residuary clauses, which transferred ownership of the Craig royalty and were recorded after the root of title, prevented extinguishment by operation of the MTA, and quieted title to the royalty interest in the Craig heirs.

{¶3} In a chart taken directly from the motion for summary judgment filed on behalf of the Craig heirs and copied verbatim into the judgment entry on appeal, the trial court acknowledged M.F. Piatt's 12.5 percent ownership of the royalty, despite the fact that M.F. Piatt and his unknown heirs, devisees, executors, administrators, relicts, next of kin and assigns ("Piatt heirs") did not answer or otherwise plead, and default judgment

---

[1] A suggestion of death was filed pursuant to Civil Rule 25(E) on January 17, 2024. Attached to the notice was the certificate of death of Dorothy Hamrick dated December 9, 2024.

was entered against them. But for the chart, the trial court does not address the Piatt royalty interest in the summary judgment entry. Further, Appellant's cross-motion did not seek summary judgment against the heirs of M.F. Piatt.

{¶4} Having reviewed the record on appeal, we find the residuary clauses in the two wills at issue in this appeal constitute recorded title transactions, which transferred title to the Craig royalty interest and prevented extinguishment of the pre-root interest by the MTA. We further find the recorded will of a royalty interest owner using a different first name than the transaction creating her interest is a recorded title transaction, where the woman's identity can be confirmed through public records. Finally, we find the preservation of one fractional royalty interest does not preserve a separate and distinct fractional interest that was transferred to a different person albeit in the same sale of royalty. Accordingly, we affirm the entry of summary judgment in favor of the Craig heirs, but reverse and vacate the entry of summary judgment in favor of the Piatt heirs.

## FACTS AND PROCEDURAL HISTORY

{¶5} On May 14, 1900, Isaac and Matilda Agin conveyed "unto J.T. Craig 3/4 and M.F. Piatt the 1/4 part of the one-half part of their royalties of all the oil and gas ..." in the "Sale of Royalty" relating to 40 acres (more or less) recorded at Monroe County Lease Volume 30, Page 140. Appellant is the surface owner of five acres ("Property") affected by the sale of royalty.

### I.     The surface chain

{¶6} On September 25, 1907, Matilda and Isaac Agin conveyed 39.94 acres to John G. Agin in a warranty deed recorded in Monroe County, which noted that the property was encumbered by the Craig and Piatt royalty interests. On May 26, 1909, John G. Agin conveyed five of the 39.94 acres to George Keeper via a warranty deed recorded in Monroe County, which noted that the deed was subject to the Craig and Piatt royalty interests.

{¶7} A certificate of transfer recorded on September 18, 1934 in Monroe County reads that George Keeper died intestate on January 24, 1934, leaving the five acres (and four acres he had obtained from John and Elisabeth Hickenbottom via a warranty deed

recorded in Monroe County on April 3, 1893) to John Keeper (1/3), J.M. Norris (1/9), Eliza Groff (1/9), Ella Willis (1/9), William Farra (1/15), Elmer Farra (1/15), Ida Gadd (1/15) and Mary Whitacre (1/15). The certificate of transfer did not mention either of the royalty interests.

{¶8} On December 20, 1934, as the result of a partition action, the sheriff of Monroe County conveyed the five-acre parcel and the four-acre parcel to J.M. Norris via a sheriff's deed recorded in Monroe County. The sheriff's deed did not mention either of the royalty interests.

{¶9} An affidavit of transfer was recorded on March 26, 1951, in Monroe County reading that J.M. Norris died intestate on July 22, 1948, leaving the five-acre parcel and the four-acre parcel to Ferne Norris (1/3), Stella Copeland (2/9), Beulah Norris (2/9), and Floyd Norris (2/9). The affidavit of transfer did not mention either of the royalty interests. On March 26, 1951, Beulah Norris, Floyd and Celestia Norris, and Stella and Amos Copeland conveyed their interest in the five-acre parcel and the four-acre parcel to Ferne Norris via a quit claim deed recorded in Monroe County. The deed did not mention either of the royalty interests.

{¶10} On July 3, 1961, the Auditor of Monroe County conveyed the five-acre parcel and the four-acre parcel in deeds recorded in Monroe County to F.W. Claugus. The deed did not mention either of the royalty interests. On December 1, 1997, Frederick W. Claugus conveyed various parcels, including the five-acre parcel, to Claugus Family Farm, L.P. in a general warranty deed recorded in Monroe County. The deed did not mention either of the royalty interests.

{¶11} On December 9, 2021, an Affidavit of Facts Relating to Title was recorded in Monroe County noting that Claugus Family Farm, L.P. had changed its name to Claugus Family Farm & Forests, L.P. effective January 3, 2022.

II.   The Piatt royalty interest chain

No estate was filed for M.F. Piatt in Monroe County.

III.  The Craig royalty interest chain

**{¶12}** J.T. Craig died testate on March 28, 1943. His will is filed at Monroe County Will Record Volume 17, Page 111. The will does not specifically bequeath the Craig royalty interest, but the remainder of the estate following the distribution of specific bequests is transferred to J.T. Craig's daughter, "Anna Holtsclaw, wife of James Holtsclaw."

**{¶13}** On April 27, 1968, Margaret Ann Holtsclaw, aka Anna Holtsclaw, died testate in Monroe County, Ohio. On May 8, 1968, the will of Margaret Ann Holtsclaw was admitted to Probate in Monroe County Case No. 4044. Although Anna Holtsclaw's will did not specifically devise the Craig royalty interest, the residuary clause transferred all of the rest, remainder and residue of her property, of every kind and description, wherever situate, which she may own or have the right to dispose of at the time of her decease, to Ethel Pyles, Opal Claus, Emil Eugene Holtsclaw, Cecil Ralph Holtsclaw, Wilbur Graydon Holtsclaw, and Gertrude Alleman, share and share alike.

**{¶14}** Ethel M. Pyles died testate on or about October 26, 1986 in Portage County, Ohio, survived by her spouse, Roscoe C. Pyles, and son, Wayne L. Pyles. Under Item II of Ethel Pyles' will, Roscoe C. Pyles was devised all property, real or personal, of every kind and description, wherever situate, which Ethel Pyles, aka Ethel M. Pyles, owned or had the right to dispose of at the time of her death. Roscoe C. Pyles died intestate on or about April 29, 1998 in Portage County, Ohio, a widower and unremarried, survived by his son, Wayne L. Pyles. Wayne L. Pyles' spouse, Dorolene E. Pyles, predeceased him in February 2, 1998. Wayne L. Pyles died testate on or about November 26, 2003 in Portage County, Ohio, a widower and unremarried, survived by his four children: Linda Myers, Connie King, Tina Koslosky, and Gail Pangborn.

**{¶15}** Wilbur Holtsclaw died testate on April 25, 1976 in Monroe County, Ohio survived by his spouse, Alice B. Holtsclaw. Although Wilbur Holtsclaw's will did not specifically devise the Craig royalty interest, Item II of the will devised to Alice B. Holtsclaw all property which he owned or had the right to dispose of at his death.

**{¶16}** Ralph Cecil Holtsclaw, aka Cecil Ralph Holtsclaw, died intestate on December 1, 1997 in Wayne County, Ohio. Under the statute of descent in effect at the time, his 1/6 interest in J.T. Craig's fractional royalty interest passed to his children and heirs at law as follows: James Holtsclaw (1/4), Betty Hamrick (1/4), Patricia Jones (1/4),

and Dorothy Hamrick (1/4). Betty Hamrick died intestate on March 6, 2023 in DuPage County, Illinois. Under the statute of descent in effect at the time her 1/4 interest in the Craig royalty interest passed to her son, Jeff Hamrick.

**{¶17}** Gertrude Alleman died testate on November 19, 2009 in Monroe County, Ohio. On February 29, 2012, Gertrude Alleman's will was filed in the Probate Court of Monroe County, Ohio, Case No. 2012 EST 9696. The will does not specifically bequeath Gertrude Alleman's interest in the Craig royalty interest, but the remainder of the estate following the distribution of specific bequests is bequeathed to John Stephens and Carolyn Stephens.

**{¶18}** On July 6, 2022, a certificate of transfer was recorded at Monroe County Official Records Volume 420, Page 2996, noting that the Craig royalty interest had passed to the following: Opal Claus (1/5), Emil Eugene Holtsclaw (1/5), Cecil Ralph Holtsclaw (1/5), Wilbur Graydon Holtsclaw (1/5), Linda Myers (1/20), Connie King (1/20), Gail Pangborn (1/20), and Tina Koslosky (1/20). On September 21, 2022, an amended certificate of transfer was recorded at Monroe County Official Records Volume 422, Page 658, noting that J.T. Craig's fractional royalty interest passed to the following: Gertrude Alleman (1/6), Opal Claus (1/6), Emil Eugene Holtsclaw (1/6), Cecil Ralph Holtsclaw (1/6), Wilbur Graydon Holtsclaw (1/6), Linda Myers (1/24), Connie King (1/24), Gail Pangborn (1/24), and Tina Koslosky (1/24). The amended certificate of transfer reads that it reflects the persons "to whom the interest was devised by Anna Holtsclaw" but there is no indication that a certificate of transfer was obtained through her estate.

**{¶19}** On February 6, 2023, John Stephens recorded an Affidavit of Heirship and Facts Relating to Title at Monroe County Official Records Volume 424, Page 1183 stating that Opal Claus died intestate on September 18, 1995, survived by her son, Emil Eugene Holtsclaw. The affidavit further states that Emil Eugene Holtsclaw died testate on December 13, 2010, with his estate passing to his children Dean J. Holtsclaw and Mark E. Holtsclaw, although the will was never probated.

IV.    The trial court proceedings

**{¶20}** Appellant filed its complaint on April 17, 2023, asserting the Craig and Piatt royalty interests conveyed by Isaac and Matilda Agin in 1900 had been extinguished by

operation of the MTA. Appellant filed a motion for authorization to serve M.F. Piatt by publication on July 13, 2023. Attached to the motion is the affidavit of Andrew P. Lycans, Esq. According to the affidavit, M.F. Piatt was deceased, as he would have been 123 years of age if he was born on the day the sale of royalty was executed. Lycans further avers the sale of royalty did not provide M.F. Piatt's address or county of residence. Lycan's office conducted a search of the probate records in Monroe County, but found no probate estate. An online search did not yield an obituary.

{¶21} The Craig heirs filed their answer, counterclaim, and cross-claim on May 22, 2023, and then subsequently filed an amended answer, amended counterclaim, and amended cross-claim on May 30, 2023. Appellant filed its reply to the amended counterclaim on June 8, 2023. Gulfport filed its answers to both the complaint and the cross-claim on June 20, 2023.

{¶22} Appellant filed a motion for default against defaulting defendants, M.F. Piatt, Anna Holtsclaw, Wilbur Graydon Holtsclaw, Alice Boggs Holtsclaw, and their unknown heirs, devisees, executors, administrators, relicts, next of kin and assigns, who were served by publication with authorization of the trial court and an order of default judgment was entered against them on January 2, 2024. The order on default judgment reads, in relevant part, "[defaulting defendants] shall be bound by any further determination made by this Court pertaining to the property which is the subject of this action including, but not limited to the applicability and effect of the [MTA] as to any interest [defaulting defendants] might claim in the subject property." (1/2/24 Order at p. 1.)

{¶23} Appellant filed its motion for summary judgment on March 28, 2024. The parties agree Appellant's root of title was the July 3, 1961 conveyance from the Monroe County Auditor to F.W. Claugus.

{¶24} Because no title transaction referencing the Piatt royalty interest had occurred since 1909, and no estate had been filed in Monroe County for M.F. Piatt, Appellant argued the Piatt interest was extinguished by the MTA. Because the Craig royalty interest passed under the residuary clauses of the wills of Margaret Ann Holtsclaw and Wilbur Holtsclaw, rather than being specifically devised, Appellant argued the wills did not constitute recorded title transactions that prevented extinguishment by operation of the MTA. In the alternative, Appellant argued that Margaret Ann Holtsclaw's will did

not constitute a recorded title transaction because her estate was indexed under the name of "Margaret Ann Holtsclaw," rather than "Anna Holtsclaw."

**{¶25}** The Craig heirs filed their motion for summary judgment on March 29, 2024. Both Appellant and the Craig heirs filed their respective responses on April 29, 2024. Appellant filed its reply in support of its motion for summary judgment on May 14, 2024. The Craig heirs filed their reply in support of their motion for summary judgment the next day on May 15, 2024.

**{¶26}** On June 25, 2024, the trial court entered summary judgment in favor of the Craig heirs. The trial court found the Holtsclaw wills constituted recorded title transactions as they were filed in the probate court within 40 years of the effective date of Appellant's root of title, thereby preventing extinguishment of the Craig royalty interest. The trial court further found it was public knowledge that Margaret Ann Holtsclaw and Anna Holtsclaw were the same person, and Appellant had actual knowledge of that fact prior to the initiation of this quiet title action. As a consequence, the trial court entered summary judgment in favor of the Craig heirs, quieted title in the Craig royalty interest to them, overruled Appellant's cross-motion for summary judgment, and dismissed Appellant's complaint. Without explanation, the trial court recognized M.F. Piatt as the owner of 12.5 percent of the royalty interest in a chart in the judgment entry. This timely appeal followed.

## SUMMARY JUDGMENT STANDARD

**{¶27}** This appeal is from a trial court judgment resolving a motion for summary judgment. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material"

depends on the substantive law of the claim being litigated. *Beckett v. Rosza*, 2021-Ohio-4298, ¶ 21 (7th Dist.).

**{¶28}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Doe v. Skaggs*, 2018-Ohio-5402, ¶ 11 (7th Dist.).

**{¶29}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

## MARKETABLE TITLE ACT

**{¶30}** In 1961, the General Assembly enacted the Marketable Title Act, R.C. 5301.47 et seq. ("MTA"), to extinguish interests and claims in land that existed prior to the root of title, with "the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title," R.C. 5301.55. The MTA provides that marketable record title – which is an unbroken chain of title to an interest in land for 40 years or more, R.C. 5301.48 – "shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title," R.C. 5301.50. Marketable record title therefore "operates to extinguish" all other prior interests. R.C. 5301.47(A).

**{¶31}** Relevant to the above-captioned appeal, such record marketable title shall be subject to "[a]ny interest arising out of a title transaction which has been recorded

subsequent to the effective date of the root of title from which the unbroken chain of title or record is started." R.C. 5301.49(D). " 'Title transaction' means any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F). Recording, in the context of R.C. 5301.49(D), includes filing in the probate court. R.C. 5301.47(B), (C).

{¶32} A royalty is generally understood as " 'one stick the bundle' of the five attributes of a severed mineral estate: right to develop (with ingress and egress), right to receive bonus payments, right to receive delay rentals, right to receive royalty payments, and right to lease (known as the executive right)." *Eisenbarth v. Reusser*, 2014-Ohio-3792, ¶ 60 (7th Dist.), aff'd, 2016-Ohio-5819. "Royalty" is defined as "the landowner's share of production, free of the expenses of production." *Kemp v. Rice Drilling D, LLC,* 2023-Ohio-4732, ¶ 29 (7th Dist.), appeal not allowed sub nom. *Kemp v. Rice Drilling, L.L.C.,* 2024-Ohio-1386.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN RELYING UPON THIS COURT'S *WARNER* LINE OF CASES, WHICH HAVE BEEN EFFECTIVELY OVERTURNED BY BOTH THIS COURT AND THE OHIO SUPREME COURT.**

{¶33} Appellant argues our holding in *Warner v. Palmer,* 2019-Ohio-4078, appeal not allowed, 2020-Ohio-647, reconsideration denied, 2020-Ohio-2819 ("*Warner II*"), is no longer good law. In *Warner II*, the alleged title transaction was a residuary clause in a recorded will. We opined:

Regarding the [MTA], there is no dispute that the deed recorded on May 11, 1967 is the root of title. Appellees have proven that two of the original reservationists passed away. Helen S. Kirk's estate was administered in Belmont County, Ohio. John W. Kirk died testate in 1987 and his estate was administered in Dallas County, Texas with an ancillary

administration in Belmont County, Ohio. John's will included a clause disposing of the residue of his estate to a trust for his children and grandchildren. Item IV of John's Last Will and Testament states:

> All the residue of my property of whatsoever kind and wheresoever situated, including all lapsed legacies and devises, I give, devise and bequeath to my Trustees in trust for the uses and purposes hereinafter set forth. This trust fund shall be called the 'Residuary Trust' and shall be divided, held, administered and disposed of as follows * * *.

(Exhibit 2).

> Appellees have established that they are the successors in title to John W. and Helen S. Kirk. The mineral interests were passed by will to the heirs of John W. Kirk, as the above clause constitutes a title transaction as defined by R.C. 5301.47 and *Warner I*. Appellees are holders to the mineral interests by succession. Even though the mineral interest was not specifically listed in the estate administration of John W. or Helen S. Kirk, that does not mean that the heirs at law are not holders or would not be given holder status. As stated in *Warner I*, the failure to list the interest during the estate administration does not mean that Appellees lost their inherited mineral interests. *See Warner I*, supra, at ¶ 26 ("A person does not lose an inherited mineral interest under probate law merely because it was not listed during an estate administration[.]") Thus, Appellees fall within the definition of a holder, entitling them to file to preserve their interests.

*Id.* at ¶ 23-24.

{¶34} Appellant contends *Warner II* is no longer good law based on the Ohio Supreme Court's decision in *Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-396 ("*Peppertree II*"). In *Peppertree II*, the Ohio Supreme Court held a recorded will was not a title transaction under R.C. 5301.49(D). However, the will at issue in *Peppertree II* did not contain a specific bequest of the mineral interest or a residuary clause. As a

consequence, the Ohio Supreme Court concluded the mineral interest passed by intestacy.  The Court reasoned:

> The will did not contain a specific devise of the Jones Interest, *nor did it include a residuary clause distributing the remainder of Ward's property to a beneficiary.* Therefore, although it was recorded after the effective date of the root of title, it did not transfer, encumber, or in any way affect title to the Jones Interest. In contrast, the transfer of the Jones Interest to Ward's heirs through intestate succession *did* affect title to an interest in land and was a title transaction. But this title transaction was not recorded within 40 years of the effective date of title. For these reasons, neither Ward's recorded will nor the unrecorded transfer of the Jones Interest through intestacy is a recorded title transaction or a saving event preventing that interest from being extinguished by the [MTA]. See *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 39 ("Because a delay rental payment does not affect title to any interest in land, occurs outside the record chain of title, and is not filed or recorded in the office of the county recorder, it is neither a title transaction nor a saving event").

(Emphasis added) *Peppertree II* at ¶ 26.  Contrary to Appellant's argument, the holding in *Peppertree II* affirms our holding in *Warner II*, as the recorded will in *Peppertree II* did not contain a residuary clause.

{¶35} Appellant relies on a form filed in the probate court in *Peppertree II* that identified Ward's heirs, which was attached to its reply brief in support of summary judgment.  Appellant writes, "[i]n both this case and *Peppertree* [*II*], a title examiner could determine who would take any real property interest not otherwise disposed of.  Thus, the *Peppertree* case did not turn on the presence or absence of a residuary clause, or real property passing under statutes of descent and distribution versus a will."  (Reply Brf. at p. 6.)

{¶36} However, the *Peppertree II* Court framed the proposition of law before it (which it ultimately rejected) as follows:

Case No. 24 MO 0015

The filing of a severed mineral interest owner's will in the probate court where the property is situated constitutes a title transaction under the Marketable Title Act even if the will does not specifically devise the interest or contain a residuary clause because the plain language of R.C. 5301.47(F), broadly defines title transaction as "any transaction affecting title to any interest in land, including title by will or descent."

*Peppertree II* at ¶ 15. Moreover, the Ohio Supreme Court concluded the inheritance in *Peppertree II* was a title transaction but was not recorded, without reference to the probate form.

{¶37} Appellant further argues that opinions from this district, specifically *Kemp, supra* (interpreting the specificity requirement in R.C. 5301.49(A)) and *Lucas v. Whyte,* 2021-Ohio-222 (7th Dist.) (title transaction must be recorded in the county where real property is located), contravene the holding in *Warner II.* Appellant attempts to import the specificity requirement codified in R.C. 5301.49(A) applied to deed language in MTA cases into title transactions governed by R.C. 5301.49(D).

{¶38} In *Blackstone v. Moore*, 2018-Ohio-4959, the Ohio Supreme Court explained the tension between the stated purpose of the MTA and the specificity requirement codified in R.C. 5301.49(A):

Balanced against the desire to facilitate title transactions is the need to protect interests that predate the root of title. To this end, the act provides that the marketable record title is subject to interests inherent in the record chain of title, "provided that a general reference . . . to . . . interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such . . . interest." R.C. 5301.49(A).

*Id.* at ¶ 8.

{¶39} Appellant argues the administrator or executor of a will in Ohio is required by statute to file an inventory of the decedent's interest in real property located in the state. *See* R.C. 2115.02. Further, the administrator or executor is statutorily required to

file an application for a certificate of transfer as to real property. *See* R.C. 2113.61(A)(1). Should the administrator or executor fail to file an application for a certificate of transfer before being discharged, an heir or devisee may file the application. *See* R.C. 2113.61(D). Given the MTA's expressed purpose of facilitating title transactions, coupled with the statutory requirements governing the transfer of real property by will and the specificity requirement in R.C. 5301.49(A), Appellant argues we should require a specific bequest of property in a recorded will to prevent extinguishment of the pre-root interest.

**{¶40}** R.C. 5301.49, captioned "Limitations on marketable record title" reads, in its entirety:

> Such record marketable title shall be subject to:
>
> (A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code;
>
> (B) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 5301.51 of the Revised Code;
>
> (C) The rights of any person arising from a period of adverse possession or user, which was in whole or in part subsequent to the effective date of the root of title;

(D) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code;

(E) The exceptions stated in section 5301.53 of the Revised Code.

**{¶41}** R.C. 5301.49(D) applies in this case, not R.C. 5301.49(A). *See Peppertree II* at ¶ 25. R.C. 5301.49(D) contains no specificity language. Moreover, the Ohio Supreme Court has opined "the recording of a title transaction under R.C. 5301.49(D) and R.C. 5301.47 is equivalent to the filing of the notice of claim during the forty-year period in the MTA." *Heifner v. Bradford*, 4 Ohio St.3d 49 (1983), paragraph two of the syllabus. Given the plain statutory language and the differences in kind in muniments of title versus title transaction, we find no reason to read the specificity requirement in R.C. 5301.49(A) into R.C. 5301.49(D).

**{¶42}** In summary, the Ohio Supreme Court's holding in *Peppertree II* – that a recorded will with no specific bequest of a real property interest and no residuary clause does not constitute a title transaction for purposes of the MTA – is consistent with our holding in *Warner II*. Further, the case law from this district upon which Appellant predicates its specificity argument interprets R.C. 5301.49(A), not (D). R.C. 5301.49(D) governs this case and contains no statutory language requiring a specific reference. Accordingly, we find Appellant's first assignment of error challenging the continuing validity of our holding in *Warner II*, *supra*, has no merit. As the two Holtsclaw wills constitute recorded title transactions, we find the trial court did not err in entering judgment in favor of the Craig heirs.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN FAILING TO CONSIDER AND APPLY RELEVANT TITLE STANDARDS WHEN DETERMINING WHAT**

**CONSTITUTES A RECORDED TITLE TRANSACTION CAPABLE OF PRESERVING AN INTEREST UNDER THE MARKETABLE TITLE ACT.**

{¶43} Appellant predicates its second assignment of error on the fact that J.T. Craig identified his daughter as "Anna Holtsclaw, wife of James Holtsclaw" in his recorded will, but she self-identifies in her own recorded will as "Margaret Ann Holtsclaw." Appellant asserts a reasonable title examiner could not ascertain from the record that Anna Holtscaw is Margaret Ann Holtsclaw, particularly where title to the Craig interest is transferred under the first name, then conveyed under the second name.

{¶44} The Ohio Supreme Court has observed the MTA is "designed to assure a reasonable title search, not to serve as a cure-all for title matters." *Blackstone*, 2018-Ohio-4959, ¶ 16, citing Smith, *The New Marketable Title Act*, 22 Ohio St.L.J. 712, 717 (1961). However, a title examiner is not required to review all "public records" when conducting a title examination. See *Lone Star Equities Inc. v Dimitrouleas*, 2015-Ohio-2294, ¶ 83 (2d Dist.) (special taxes not shown on the county treasurer's public access records need not be reported by a title examiner; while BOR and BTA proceedings are public records, they are not considered public records for purposes of performing title examinations and reporting the status of title). Moreover, it is not a title agent's job to "dig up" everything that is arguably accessible to the public; rather relevant title examination standards limit the universe of documents that a title examiner can reasonably be expected to consult when conducting a title examination. *B&H Res., L.L.C. v. 28925 Lorain Inc.*, 2017-Ohio-7248, ¶ 18 (8th Dist.) (looking at only latest tax duplicate consistent with industry standards in determining taxes due).

{¶45} Turning to the specific facts in this case, the affidavit of Daniel Meehan, a title examiner employed by Appellant, reads, "[m]y examination of the Monroe County Probate records did not show an estate was ever filed for an Anna Holtsclaw in Monroe County, Ohio. My examination did not identify the estate filed for Margaret Ann Holtsclaw as related to the [Property], as the names Anna Holtsclaw and Margaret Ann Holtsclaw vary significantly from one another." (Meehan Aff. at ¶ 10-11.) Appellant argues the Craig heirs relied on census records, which are not commonly considered in the standard title search.

**{¶46}** The Craig heirs, on the other hand, contend the fact that Anna and Margaret Ann are the same person could be determined solely from publicly-filed county documents. They write:

> A simple search for "Holtsclaw, Anna" in the Recorder's Office (the same name that appears in J.T. Craig's Will), reveals a deed recorded in 1934 at DV 104/222, showing that J.W. Holtsclaw is the husband of "Anna M. Holtsclaw." A search in the Recorder's Office for "Holtsclaw, J" reveals a 1940 oil and gas lease signed by James W. Holtsclaw and his wife, Margaret Holtsclaw (LV 85/199). From there, a search for "Holtsclaw, Margaret" in the Monroe County Probate Court easily reveals Margaret Ann Holtsclaw's estate and her Last Will and Testament filed in 1968. All of these documents are of record in the Monroe County Courthouse and there is nothing extraordinary about this search. All the other additional evidence presented by Appellees concerning Anna Holstclaw's identify, including the census records, birth records, and tombstones, simply provides confirmation of what should have been already apparent from the documents that are of record in the courthouse.

(Appellee's Brf. at p. 12-13.)

**{¶47}** Appellees further argue that Appellant had actual knowledge that Anna and Margaret Ann are the same person based on pleadings in a previous lawsuit:

> In the case styled *Claugus Family Farm, L.P., v. James Holtsclaw*, C.P. Monroe Case No. 2019-398, which was filed on November 8, 2019, Appellant filed an action relating to a separate 64.19 acres property ("64.19 Acre Property") located in Green Township, Monroe County, Ohio. Paragraphs 43-45 of Appellant's Amended Complaint alleged that the 64.19 Acre Property was transferred:

1.      from W.H. Holtsclaw, aka William H. Holtsclaw, to Naomi Holtsclaw in a 1916 certificate of transfer recorded at Monroe County Deed Volume 84, Page 137,

2.      from Naomi Holtsclaw to James Holtsclaw, aka J.W. Holtsclaw, William Holtsclaw, aka W.F. Holtsclaw, John Holtsclaw, aka J.H. Holtsclaw, George Holtsclaw, aka G.K. Holtsclaw, Willard Holtsclaw, aka Willard M. Holtsclaw, Odessa Yoss, aka Dessie Yoss, Minnie Roth, aka Minnie C. Roth, Olive Jeffers, aka Olive J. Jeffers, and Martha Holtsclaw, aka Martha Ellen Holtsclaw, in a 1932 certificate of transfer recorded at Monroe County Deed Volume 102, Page 599, and

3.      from John Holtsclaw, aka J.H. Holtsclaw, James Holtsclaw, aka J.W. Holtsclaw, Willard Holtsclaw, aka Willard M. Holtsclaw, Odessa Yoss, aka Dessie Yoss, George Holtsclaw, aka G.K. Holtsclaw, Willard Holtsclaw, aka Willard M. Holtsclaw, Minnie Roth, aka Minnie C. Roth, Olive Jeffers, aka Olive J. Jeffers, and Martha Holtsclaw, aka Martha Ellen Holtsclaw, to John Holtsclaw, aka J.H. Holtsclaw, Olive Jeffers, aka Olive J. Jeffers, and Martha Holtsclaw, aka Martha Ellen Holtsclaw, in a 1934 deed ("1934 Deed") recorded at Monroe County Deed Volume 104, Page 222.

In the 1934 Deed, the grantors (including James Holtsclaw, aka J.W. Holtsclaw) reserved "the Royalty in the Oil and Gas, being the one-eight (1/8) of all the oil and gas produced and saved from the above described premises" (the "Holtsclaw Royalty").

The 1934 Deed was signed by "Anna M. Holtsclaw, wife of J.W. Holtsclaw" (emphasis added) in order to release her right and expectancy of Dower in the 64.19 Acres Property. Yet, when Appellant then described (in its Amended Complaint) the subsequent transfers that had occurred with respect to the Holtsclaw Royalty, it stated in paragraph 53 that James W.

Holtsclaw died in 1948 leaving "Margaret Holtsclaw" as his widow. Based on the allegations in Appellant's own prior complaint, it was and has been aware that Anna Holtsclaw and Margaret Ann Holtsclaw are one and the same and that Anna Holtsclaw, aka Margaret Ann Holtsclaw, was the surviving spouse of James Holtsclaw. Appellant even identified Margaret Holtsclaw's, Wilbur Holtsclaw's, and Gertrude Alleman's estates in paragraphs 54, 55, and 56 of its Amended Complaint as further transfers of the Holtsclaw Royalty. As stated in the Agreed Final Judgment Entry filed on July 25, 2022 (which was indexed under the name Margaret Holtsclaw but was cross-referenced to the 1934 Deed referring to her as Anna M. Holtsclaw), Appellant dismissed its lawsuit against a number of defendants (includ[ing] Defendants/Appellees herein) after having accepted delivery of a number of quit claim transfers, because it knew that these defendants were the holders of the Holtsclaw Royalty that had been reserved by J.W. Holtsclaw (the husband of Anna Holtsclaw, aka Margaret Holtsclaw).

(Emphasis in original) (*Id.* at p. 14-15.)

**{¶48}** Appellant predicates its entire argument on the fact that "Anna" and "Margaret Ann" are very different names.  Given the additional information in the county records cited by the Craig heirs, as well as the evidence that Appellant had actual knowledge that Anna and Margaret Ann are the same person, we find Margaret Ann Holtsclaw's will constitutes a title transaction sufficient to prevent extinguishment of the Craig royalty interest by operation of the MTA.  Accordingly, we further find Appellant's second assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED IN HOLDING THAT THE TITLE INTEREST OF A PARTY IN DEFAULT HAD BEEN PRESERVED, WHERE NO EVIDENCE OF A PRESERVING EVENT WAS PRESENTED AS TO THAT HOLDER.**

Case No. 24 MO 0015

{¶49} Finally, Appellant argues the trial court erred in concluding that the 12.5 percent royalty interest of M.F. Piatt, that is, the 1/4 of the half of the royalty transferred in 1900, was preserved by the title transactions that preserved the 3/4 of the half of the royalty interest transferred in 1900 to J.T. Craig. The judgment entry provides no analysis regarding preservation of the Piatt royalty interest and does not quiet title to the Piatt royalty interest. The only reference to the Piatt royalty interest is in a chart and reflects that M.F. Piatt has a 12.5 percent royalty interest.

{¶50} Appellees contend "[a] title transaction involving the interest of one mineral holder preserves the entire mineral interest for all holders." (Appellees' Brf. at p. 16, citing *Carpenter v. Antero Res. Appalachian Corp.*, 2022-Ohio-4619, ¶ 47 (7th Dist.), citing *Hartline v. Atkinson,* 2020-Ohio-5606 (7th Dist.)). In *Hartline*, we recognized that "[p]ursuant to R.C. 5301.56(C)(2) [of the Dormant Mineral Act ("DMA")], [one mineral holders' preservation affidavit] 'preserves the rights of all holders of a mineral interest in the same lands.' " *Hartline* at ¶ 36.

{¶51} In *Hartline*, the purported holders of the mineral interest were the grandchildren of the grantor who reserved a fractional interest of the oil and gas. We held an affidavit of preservation filed by one of the grandchildren pursuant to the DMA preserved the mineral interest for all of the grandchildren. R.C. 5301.56(C)(2) of the DMA reads, "[a] claim that complies with division (C)(1) of this section or, if applicable, divisions (C)(1) and (3) of this section preserves the rights of all holders of a mineral interest in the same lands.

{¶52} Appellant correctly argues the Piatt royalty interest and the Craig royalty interest are separate and distinct conveyances to separate and distinct individuals, albeit in the same sale of royalty. The two royalty interests have separate chains of title. The facts in this case are not analogous to the facts in *Hartline*, *supra,* where all of the purported mineral interest owners were heirs of the same grantor, who reserved a fractional interest of the oil and gas. Here, the purported royalty interest owners are the heirs of two separate grantees in a sale of royalty. Therefore, we find the title transactions that prevent extinguishment of the Craig royalty interest do not likewise prevent extinguishment of the Piatt royalty interest. Accordingly, we find the third assignment of

error has merit and we reverse and vacate the entry of summary judgment in favor of the Piatt heirs.

**{¶53}** Default judgment was entered in favor of Appellant and against the Piatt heirs on January 2, 2024. Although the January 2, 2024 entry is a final appealable order, the trial court cautioned the defaulting defendants (the Piatt heirs) that they "shall be bound by any further determination made by [the trial court] pertaining to the property which is the subject of this action including, but not limited to the applicability of the [MTA] as to any interest Defendants might claim in the subject property." Appellant's motion for summary judgment sought a determination of the ownership of the Craig royalty interest only. As a consequence, the ownership of the Piatt royalty interest is not before us on appeal.

## CONCLUSION

**{¶54}** For the foregoing reasons, the entry of summary judgment in favor of the Craig heirs is affirmed, and the entry of summary judgment in favor of the Piatt heirs is reversed and vacated.

Robb, P.J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the entry of summary judgment in favor of the Craig heirs from the Court of Common Pleas of Monroe County, Ohio, is affirmed and the entry of summary judgment in favor of the Piatt heirs is reversed and vacated. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**